
EOD
10/02/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| MICHAEL ROY BROWN, SR. | § | |
| fdba APALU ASSOCIATES, LLC | § | |
| fdba APALU LP, | § | Case No. 05-46668 |
| | § | (Chapter 7) |
| Debtor. | § | |
| | § | |
| CHRISTOPHER J. MOSER, TRUSTEE, | § | |
| | § | Adv. Proc. No. 06-4032 |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| JP MORGAN CHASE BANK, N.A., | § | |
| | § | |
| Defendant. | § | |

## **MEMORANDUM OPINION (CORRECTED)**[1]

On January 25, 2007, this Court conducted a trial on the "Original Complaint" filed by Christopher J. Moser, Trustee for Michael Roy Brown, Sr. (the "Trustee"). The Court exercises its core jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 145(b)(2)(F). This Memorandum Opinion embodies the Court's findings of fact and conclusions of law. *See* FED. R. BANKR. P. 7052.[2]

### I. BACKGROUND

Michael and Elizabeth Brown executed a 30-year loan secured by their homestead property with Bank One N.A. ("Bank One") on March 26, 2004. Bank One perfected its

---

[1] This Memorandum Opinion is identical in substance to the original Memorandum Opinion entered on September 28, 2007. The Court has amended the original Memorandum Opinion to make several non-substantive clarifications and changes, including the correction of typographical errors.

[2] To the extent any of the following findings of fact are construed as conclusions of law, they are hereby adopted as such. Likewise, to the extent any of the following conclusions of law are construed as findings of fact, they are hereby adopted as such.

secured interest in their home on or about April 14, 2004 by recording the deed of trust in the deed records of Collin County, Texas. Bank One subsequently merged with JP Morgan Chase Bank, N.A. (the "<u>Defendant</u>").

On July 27, 2005, Michael and Elizabeth Brown signed another loan, also secured by their homestead property, with the Defendant. The Defendant funded the new loan on August 1, 2005. A portion of the new loan was used to retire the remaining balance on the original loan in the amount of $122,102.17. The remainder of the new loan, $25,897.83, was paid to the Debtor and his wife and used for improvements to their homestead property.

The new loan is a non-recourse loan. Thus, the event of a payment default, the Defendant may look only to its collateral to satisfy any outstanding debt. The Defendant perfected its secured interest in the Brown's homestead on August 16, 2005, by filing the deed of trust in the deed records of Collin County, Texas.

Michael Brown (the "<u>Debtor</u>") initiated the bankruptcy case associated with this adversary proceeding by filing a voluntary petition for relief under Chapter 7 of Title 11 of the United States Code (the "<u>Bankruptcy Code</u>") on October 11, 2005 (the "<u>Petition Date</u>"). In the schedules filed with his bankruptcy petition, the Debtor claimed an exempt statutory interest in his homestead in the amount of $7,000 pursuant to §522(d)(1) of the Bankruptcy Code. Neither the Plaintiff nor any other party objected to the Debtor's claimed exemptions. On December 20, 2005, the Debtor filed a "Reaffirmation Agreement" in which he reaffirmed his obligation to the Defendant.

The Plaintiff initiated this adversary proceeding on February 7, 2006. The Plaintiff seeks to (1) avoid the Defendant's mortgage on the Debtor's home as a

preference under §547 of the Bankruptcy Code, and (2) preserve the mortgage for the estate's benefit pursuant to §551 of the Bankruptcy Code. The Defendant challenges the Plaintiff's *prima facie* case and seeks to establish the "contemporaneous exchange for new value" defense set forth in §547(c)(1) of the Bankruptcy Code.

## II. DISCUSSION

### A. The Elements of a Preferential Transfer (11 U.S.C. §547(b))

Section 547(b) of the Bankruptcy Code authorizes the avoidance of a transfer of "an interest of the debtor in property" *if* five conditions are satisfied and *unless* one of seven exceptions defined in §547(c) is applicable. The five characteristics of an avoidable transfer are that it (1) benefit a creditor; (2) be on account of antecedent debt; (3) be made while the debtor was insolvent; (4) be made within 90 days before bankruptcy (or one year if the creditor was an insider at the time of the transfer); and (5) enable the creditor to receive a larger share of the estate than if the transfer had not been made. Section 547(g) expressly states that the debtor has the burden of proving the elements of a preferential transfer under subsection (b), and the creditor or party in interest against whom recovery is sought has the burden of proving the non-avoidability of a transfer under subsection (c).

The creation of a security interest in property is considered a transfer for purposes of §547(b) of the Bankruptcy Code. *See* 11 U.S.C. §101(54); *Superior Bank, FSB v. Boyd (In re Lewis)*, 398 F.3d 735, 746 (6th Cir. 2005). The facts agreed to by the parties establish that the Defendant's creation of a security interest in the Debtor's homestead occurred within 90 days of the Debtor's bankruptcy and, therefore, that the Trustee is entitled to a presumption that the Debtor was insolvent when the transfer was made. *See*

11 U.S.C. §547(f). The Defendant failed to rebut this presumption by producing evidence of the Debtor's solvency at the time of the creation of the disputed security interest in the Debtor's homestead. *Baker Hughes Oilfield Operations, Inc. v. Cage (In re Ramba, Inc.)*, 416 F.3d 394, 403 (5th Cir. 2005).

Unless a transfer is perfected within ten days of the time the transfer takes effect, the transfer is deemed to have been "made" at the time it is perfected. *See* 11 U.S.C. §547(e)(2)(A)-(B).[3] Under §547(e)(1)(A), the transfer is "perfected when a bona fide purchaser of such property from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest that is superior to the interest of the transferee." 11 U.S.C. §547(e)(1)(A). Under Texas law, a "deed of trust is void as to a creditor or to a subsequent purchaser for a valuable consideration without notice unless the instrument has been acknowledged, sworn to, or proved and filed for record as required by law." TEX. PROP. CODE §13.001(a).

Here, the Debtor executed the new note and deed of trust on July 27, 2005. The new loan was funded on August 1, 2005, and the new mortgage was not recorded within ten days thereafter. Accordingly, under §547(e)(2), the date of the transfer of the security interest in the Debtor's homestead is deemed to be the time of perfection, which, in accordance with §547(e)(1)(A) and Texas law, occurred on August 16, 2005 when the Defendant filed the new deed of trust for recordation. The facts and applicable law establish that the transfer of the security interest was made on account of an antecedent debt, which was created when the loan proceeds were distributed. *See, e.g., First Baptist Church of Ft. Worth v. Baptist Bible Sem.*, 347 S.W.2d 587 (Tex. 1961) (stating that

---

[3] The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (the "BAPCPA") amended §547(e)(2)(A)-(B). These amendments are not applicable to this proceeding, as the Debtor's bankruptcy petition was filed before the October 17, 2005 effective date of the BAPCPA.

4

"Moreover, for an instrument to be a mortgage, there must be a debt.").

With respect to the final element of the Trustee's *prima facie* case -- §547(b)(5) -- the test is whether the transfer enabled the creditor to receive more than the creditor would have received in a Chapter 7 bankruptcy case. *See In re Sumrall,* 9 F.3d 1547 (5th Cir. 1993). The Plaintiff argues that the Defendant, having received full payment of its original loan to the Debtor and having executed a release of its lien on the Debtor's homestead, was an unsecured creditor when it recorded the deed of trust at issue.[4] The schedules in this case reflect that the Debtor's non-exempt assets have no value and there will be no distribution to unsecured creditors. Thus, the Plaintiff argues that the Defendant would have received a negligible amount, if any, on a liquidation basis.

In response, the Defendant asserts the granting of a replacement mortgage in 2005 did nothing to improve its position. With a secured claim, the Defendant would have received the full value of its security in the real estate in a Chapter 7 bankruptcy case. Thus, the Defendant argues that its mortgage should not be treated as a preferential transfer under §547(b) of the Bankruptcy Code.

Clearly, there is a question as to whether a transfer may be avoided if the preference is merely a technical one. *See In re Biggers*, 249 B.R. 873, 877-79 (Bankr. M.D. Tenn. 2000). "Essentially, a voidable preference must have depleted the estate." *In re Ramba, Inc.,* 437 F.3d 457, 460 (5th Cir. 2006) (citing *Gulf Oil Corp. v. Fuel Oil Supply & Terminaling, Inc.,* 837 F.2d 224, 230-31 (5th Cir. 1988)). In *Ramba*, for example, the Fifth Circuit concluded that the transfer of fully encumbered assets did not

---

[4] Under Texas law, payment of the mortgage debt extinguishes the encumbrance. *Spencer-Sauer Lumber Co. v. Ballard*, 98 S.W.2d 1054 (Tex. Civ. App. – San Antonio, 1936). The mortgagor is entitled to a release of liens upon payment. *See, e.g., Noriss v. Patterson*, 261 S.W.2d 758 (Tex. Civ. App. – Ft. Worth 1953, writ refused n.r.e.). If the mortgagee refuses to execute a release, the mortgagor may bring suit to have the lien cancelled. *See, e.g., Mickie v. McGehee*, 27 Tex. 134 (1863).

deplete the estate and could not be avoided as a preference, since the Debtor held bare legal title to those assets. Likewise, when a debtor exchanges one secured debt for another, the estate is not diminished. *See Shapiro v. Homecomings Financial Network, Inc. (In re Davis),* 319 B.R. 532, 536 (Bankr. E.D. Mich. 2005); *Gregory v. Community Credit Co. (In re Biggers),* 249 B.R. 873, 877-79 (Bankr. M.D. Tenn. 2000).

The Court concludes that, in this case, the Defendant's refinance of its original loan in the amount of $122,102.17, and its perfection of its own mortgage for the original loan amount did not result in a diminution of the estate. However, with respect to the additional $25,897.83 loaned to the Debtor for home improvements, the Defendant depleted the assets available for distribution to unsecured creditors by placing a lien upon what was, at that time, unencumbered property to secure the additional loan.[5] The Defendant then failed to avail itself of the safe harbor of §547(e)(2), which would have sheltered the Defendant from this preference action, by timely perfecting its interest in the Debtor's homestead property. Thus, to the extent the Defendant's mortgage secures the $25,897.83 home improvement loan, the Court concludes that, under the circumstances, the Trustee has established each of the elements of a preferential transfer under §547(b) of the Bankruptcy Code.

### B. Contemporaneous Exchanges for New Value (11 U.S.C. §547(c)(1))

The Defendant argues that §547(c)(1) applies to protect the transfer of a security interest in the Debtor's home from avoidance. Section 547(c)(1) provides that a trustee may not avoid a preferential transfer "to the extent that such transfer was ... intended by the debtor and the creditor to or for whose benefit such transfer was made to be a

---

[5] As previously discussed, this case involves a federal homestead exemption under §522(d)(1) of the Bankruptcy Code. The application of this analysis might have been different if the Defendant had claimed his homestead as exempt under Texas law in his bankruptcy schedules.

6

contemporaneous exchange for new value given to the debtor; and ... in fact a substantially contemporaneous exchange." 11 U.S.C. §547(c)(1). The Trustee in this case does not dispute the fact that the Defendant provided the Debtor with new value and does not question that the parties intended the exchange to be contemporaneous. At issue here is whether the exchange was "in fact a substantially contemporaneous exchange."

As an initial matter, the failure to perfect a non-purchase money security interest within the §547(e)(2) grace-period does not foreclose a finding that, under §547(c)(1), the transfer of the security interest and the provision of the new value were in fact substantially contemporaneous. *See In re Dorholt, Inc.,* 224 F.3d 871 (8th Cir. 2000); *In re Marino,* 193 B.R. 907, 912-16 (9th Cir. BAP. 1996), *aff'd*, 117 F.3d 1425 (9th Cir. 1997); *Pine Top Ins. Co. v. Bank of Am. Nat'l Trust & Sav. Ass'n,* 969 F.2d 321, 328-29 (7th Cir. 1992); *Telecash Indus. Inc. v. Universal Assets (In re Telecash Indus, Inc.)*, 104 B.R. 401, 404 (Bankr. D. Utah 1989). Section 547(e)(2) addresses when a transfer is deemed to have occurred – not with whether an exchange is substantially contemporaneous. Although some courts have adopted §547(e)(2) as a "bright line" test for analyzing the substantial contemporaneity defense, *see Ray v. Security Mut. Fin. Corp. (In re Arnett)*, 732 F.2d 358 (6th Cir. 1984), this Court, like many other courts, rejects a rigid approach to §547(c)(1). *See, e.g., In re Kerst,* 347 B.R. 418, 424 fn 10 (Bankr. D. Colo. 2006) (collecting cases).

Congress' use of the term "substantially contemporaneous" in §547(c)(1) suggests that "contemporaneity is a flexible concept which requires a case-by-case inquiry into all relevant circumstances (*e.g*., length of delay, reason for delay, nature of the transaction, intentions of the parties, possible risk of fraud) surrounding the allegedly preferential

7

transfer." *In re Dorholt,* 224 F.3d at 874; *In re Marino,* 193 B.R. at 914. "Congress knew how to adopt a specific time limit; it did so in the purchase money security interest exception, §547(c)(3)." *In re Dorholt,* 224 F.3d at 874. Instead, Congress "chose a less rigid standard for §547(c)(1), no doubt because that provision governs a wider variety of loans and credit transactions." *Id.*

This Court holds that the grace period set forth in §547(e)(2) constitutes a safe harbor, not an absolute deadline, and adopts a case-by-case approach to the determination of whether an exchange was, in fact, substantially contemporaneous. In cases in which there is a significant delay between the distribution of loan proceeds and the transfer of a security interest, §547(c)(1) generally does not protect the transfer from avoidance. *See, e.g., In re Arnett*, 731 F.2d at 362 (33 days held not to be contemporaneous); *In re Bullion Reserve of North America*, 836 F.2d 1214 (9th Cir. 1988) (77 days not contemporaneous); *In re Pepper,* 339 B.R. 756 (10th Cir. 2006) (more than seven months held not to be contemporaneous). However, the inquiry into whether a transfer was part of a "substantially contemporaneous exchange" is a flexible one that takes into account not only the length of the delay but also factors such as the reason for delay, the nature of the transaction, the intentions of the parties, and the risk of fraud. *In re Marino*, 193 B.R. at 914; *Pine Top Ins. Co.*, 969 F.2d at 328. When the delayed perfection of a security interest was caused by circumstances beyond the creditor's control or can be satisfactorily explained, the transfer may still be characterized as substantially contemporaneous in fact. *In re Marino*, 193 B.R. at 915.

Here, the new loan documents were signed on Thursday, July 27, 2007. The disbursement was not made until Monday, August 1, 2005, in order to provide the Debtor

8

and his wife with an opportunity to rescind. The Defendant released its original lien on the property on Monday, August 8, 2005. Sixteen days after the loan was funded, on Tuesday, August 16, 2005, the Defendant recorded its current deed of trust.

The Defendant's delay in recording the current deed of trust was due entirely to circumstances within the Defendant's control. According to the Defendant, the loan was made shortly after the merger of Bank One with the Defendant. The Defendant's procedure for processing loans at that time was to send all residential mortgages executed in Texas to Lexington, Kentucky for processing. The Defendant followed this procedure.

After the loan documents were received in Lexington, Kentucky, the Defendant sent the funds necessary to pay off the original loan to the loan servicing entity in Milwaukee, Wisconsin. After receiving notice that the original loan had been satisfied, the Defendant then sent two documents from Lexington, Kentucky, to the County Clerk for Collin County, Texas, for recording – specifically, a release of its original deed of trust and a new deed of trust for the new loan. The Defendant did not establish whether these documents were sent separately or at the same time. The Defendant admitted that the 8-day delay between the recording of the release of its original lien and the recording of a new lien was unusual but failed to offer any explanation for the delay.

As the party from whom recovery is sought in this action, the Defendant has the burden of proof in establishing that an exception to avoidance of its lien as a preference exists. *See* 11 U.S.C. §547(g). The Court finds, as an initial matter, that the release of the original lien on August 8, 2005 in exchange for the replacement lien filed on August 16, 2005 occurred within the safe harbor period set forth in §547(e)(2). Accordingly, to the extent the current deed of trust merely provided a replacement lien covered by the

9

original lien, the exchange was, in fact, substantially contemporaneous. However, to the extent the replacement lien covers the additional $25,897.93 home improvement loan, the evidence presented by the Defendant regarding the parties' transaction failed to explain the delay between the funding of the loan on August 1, 2005 and the perfection of its interest on August 16, 2005. In the absence of any satisfactory explanation of this delay or any showing that the delay was occasioned by factors beyond the Defendant's control, the Court finds that the Defendant has failed to carry its burden of proof with respect to the $25,897.93. *See In re Marino*, 193 B.R. at 915.

### III. CONCLUSION

For the reasons stated above, the Court finds that the Plaintiff established that the mortgage recorded by the Defendant on August 16, 2006 may be avoided under §547(b) of the Bankruptcy Code to the extent the mortgage secures the $25,897.83 advanced to the Debtor for home improvements. The Court further finds Defendant failed to establish its affirmative "contemporaneous exchange for new value" defense under §547(c)(1) of the Bankruptcy Code to the extent of $25,897.83 but that the Defendant has established such defense as to the balance of the claimed preferential transfer. The mortgage, having been avoided to the extent of $25,897.83, will be preserved for the benefit of the estate pursuant to §§ 541(a)(4) and 551 of the Bankruptcy Code. *See Suhar v. Burns (In re Burns)*, 322 F.3d 421, 428 (6th Cir. 2003). A separate judgment will be entered in the Plaintiff's favor consistent with this Memorandum Opinion.

Signed on 10/2/2007

*Brenda T. Rhoades*   SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE

10